UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DWIGHT DORVILLE,

                              Petitioner,              DECISION AND ORDER

-vs-

                                                                23-CV-6075 (CJS)

JEFFREY SEARLS, in his
official capacity as Officer-in-Charge,
Buffalo Federal Detention Facility,

                              Respondent.
_____

## I. INTRODUCTION

Dwight Dorville ("Petitioner"), a citizen of St. Lucia, has been detained since April 12, 2021, splitting his time between the custody of the Department of Homeland Security and of the New York State Department of Corrections and Community Supervision. Pet., ¶ 3, Jan. 30, 2023, ECF No. 1. He has filed this action *pro se* pursuant to 28 U.S.C. § 2241, arguing that his continued detention without a bond hearing is a violation of his due process rights under the Fifth Amendment. Pet. at ¶ 7. Petitioner asks that he be either released from custody or, in the alternative, be granted a bond hearing at which Respondent would bear the burden to prove by clear and convincing evidence that Petitioner's continued detention is necessary to prevent flight or danger to the community. Pet. at ¶ 11. In opposition, Respondent maintains that Petitioner's application should be denied because there is a significant likelihood that he will be removed from the United States within the foreseeable future.

For the reasons that follow, Petitioner's application for habeas relief [ECF No. 1] is denied, and the Clerk of Court is directed to close this case.

## II. LEGAL PRINCIPLES

28 U.S.C. § 2241 authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United

1

States." In determining whether to grant habeas relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. 28 U.S.C. § 2246 and § 2247. *See also Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Immigration and Nationality Act is codified in title 8 of the United States Code. With respect to immigration matters such as those underlying the present habeas application, 8 U.S.C. § 1229a(a)(1) authorizes an Immigration Judge to conduct proceedings on behalf of the Attorney General to decide upon the inadmissibility or deportability of an alien. An alien placed in such removal proceedings may be charged with any applicable ground of inadmissibility under § 1182(a) or any applicable ground of deportability under § 1227. § 1229a(a)(2). Federal courts retain jurisdiction under 28 U.S.C. § 2241 to review "purely legal statutory and constitutional claims" regarding these proceedings, but jurisdiction does not extend to "discretionary determinations" by Immigration Judges and the Board of Immigration Appeals. *Sol v. I.N.S.*, 274 F.3d 648, 651 (2d Cir. 2001). Judicial review of removal orders is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

## BACKGROUND[1]

Petitioner is a native and citizen of St. Lucia, who entered the United States at San Juan, Puerto Rico on July 6, 2006. Gang Decl. at ¶ 6. Although he was a nonimmigrant visitor authorized to remain in the United States only until October 4, 2006, Petitioner failed to depart the country. *Id.* Instead, Petitioner went to high school in Brooklyn, New York, graduated in 2010, and then got a job "off the books that paid cash" so that he could help his mother pay the bills. Pet. at 14.

Over the past decade, Petitioner has been arrested on several occasions, including:

---

[1] Consistent with 28 U.S.C. § 2243 through § 2247, the following background is drawn from Petitioner's submission, as well as Respondent's submission of an affidavit from ICE Deportation Officer Thomas Gang, an individual familiar with the facts and circumstances of Petitioner's immigration proceedings, and records from the underlying proceedings themselves. Gang Decl., Mar. 20, 2023, ECF No. 4-1.

in 2011 for criminal possession of marijuana; in 2012 for criminal possession of a loaded firearm, and for criminal possession of a firearm and stolen property; in 2015 for criminal possession of a firearm; in January 2018 for menacing in the third degree and harassment; in May 2018 for driving while intoxicated; in March 2019 for criminal possession of a weapon and a controlled substance; in July 2019 for possession of marijuana; in October 2020 for criminal possession of a controlled substance in the third degree with intent to sell, and for assault and criminal obstruction of breathing or blood circulation; and in January 2021 for criminal possession of a weapon and possession of a controlled substance with intent to sell. Gang Decl. at ¶ 6–21. Some of the charges were dismissed, and it is unclear what the dispositions were on many of the others. *Id.* Nevertheless, Petitioner has been identified by the New York Police Department as a member of the Crips criminal street gang. Gang Decl. at ¶ 22.

With respect to immigration proceedings, the Enforcement and Removal Operations unit of the Immigrations and Customs Enforcement Division of the Department of Homeland Security ("ICE") encountered Petitioner following his 2012 arrest, and served him with a notice to appear, charging him with being subject to removal under Section 237(a)(1)(B) of the Immigration and Nationality Act. Gang Decl. at ¶ 9. On January 30, 2013, an Immigration Judge ("IJ") ordered Petitioner to be removed to his native St. Lucia, and Petitioner appealed to the Board of Immigration Appeals ("BIA"). Gang Decl. at ¶ 10–11. On May 22, 2013, the BIA dismissed the appeal. Gang Decl. at ¶ 12.

On April 12, 2021, ICE arrested Petitioner at his home and he has been in detention since that time at various facilities. Gang Decl. at ¶ 23. On August 5, 2021, the government of St. Lucia agreed to issue travel documents for Petitioner, and his removal flight was scheduled. Gang Decl. at ¶ 26; *see also*, Ex. A, 27–28, Mar. 20, 2023, ECF No. 4-2 (letter from Vice Consul for St. Lucia dated Aug. 5, 2021, indicating Petitioner's travel document was in process but would not be issued until receipt of proof of a negative Covid-19 test within 5

days of his scheduled arrival in St. Lucia). In September 2021, however, Petitioner filed with the BIA a motion to reconsider the IJ's 2013 order of removal and to reopen his removal proceedings. Gang Decl. at ¶ 28. Then, while his motions were pending before the BIA, Petitioner declined to take the COVID-19 test required by the government of St. Lucia prior to travel to that country, and therefore could not be removed. Gang Decl. at ¶ 29.

On September 14, 2021, ICE issued Petitioner a "Notice of Failure to Comply" with his obligation to assist in his own removal. Ex. A at 13; *see also* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien . . . conspires or acts to prevent the alien's removal subject to an order of removal."). The notice informed Petitioner that, as a result of his refusal to take a COVID-19 test to facilitate his removal, his removal period had been extended and he would "remain in ICE custody until [he] demonstrate[s] that [he is] making reasonable efforts to comply with the order of removal and that [he is] cooperating with ICE's efforts to remove [him]." Ex. A at 13. In October and November of 2021, ICE issued Petitioner additional Notices of Failure to Comply, and again indicated that he would remain in custody until he demonstrated reasonable cooperation in his own removal. Ex. A at 14–15.

On December 2, 2021, the BIA declined to reconsider the IJ's 2013 order of removal, and denied Petitioner's motion to reopen his appeal. Ex. A at 16–19. On that same day, Petitioner was turned over to the New York State Department of Corrections and Community Supervision (DOCCS). Gang Decl. at ¶ 35. Shortly thereafter, Petitioner, through counsel, petitioned the Second Circuit for review of the agency's order; that is, he filed a "petition for review" ("PFR"). Reply (Ex.), May 8, 2023, ECF No. 11-1 (copy of the Second Circuit docket sheet).

Petitioner was returned to ICE Custody on February 2, 2022. Gang Decl. at ¶ 36. Soon afterwards, he filed a motion for stay of removal with the Second Circuit. *Id.* Then, Petitioner was again transferred to DOCCS custody from July 29, 2022 through September

2, 2022 to face sentencing and imprisonment on a prior conviction of criminal possession of a weapon. Gang Decl. at ¶ 39, 42. Upon Petitioner's return to ICE custody from DOCCS, ICE conducted another custody review, and found that Petitioner should remain detained due to his convictions for weapons possession and drug possession. Ex. A at 20.

In December 2022, Petitioner filed a motion asking the IJ to conduct a bond hearing. Ex. A at 21. In his review in preparation for the hearing, the IJ determined that he was without jurisdiction to entertain a bond redetermination request pursuant to 8 U.S.C. § 1231(a)(2), because Petitioner was mandatorily detained as a result of being in his removal period. Ex. A at 25 (referencing § 241(a)(2) of the Immigration and Nationality Act). On January 7, 2023, ICE conducted another custody review and stated that it has requested another travel document for Petitioner's removal, and "has reason to belie[ve] there's a significant likelihood that [Petitioner's] removal will occur in the reasonably foreseeable future." Ex. A at 26.

Petitioner filed his application for habeas relief *pro se* on January 30, 2023. Pet., ECF No. 1. Respondent filed his answer, with exhibits, on March 20, 2023. Answer, Mar. 20, 2023, ECF No. 4. Attorney Craig Relles filed a notice of appearance on behalf of Petitioner on April 14, 2023, and Petitioner filed a counseled reply brief on May 8, 2023. Reply, May 8, 2023, ECF No. 11. As far as the Court is aware, both the PFR and Petitioner's motion for a stay of removal remain pending before the Second Circuit.

## IV. DISCUSSION

In his counseled reply brief, Petitioner concedes that "there is no dispute that [Petitioner] is subject to a final order of removal, and that *Zadvydas* controls." Reply at 2. Nevertheless, he maintains that he has demonstrated that there is no significant likelihood of his removal in the reasonably foreseeable future because his pending matters before the Second Circuit create a legal impediment to his removal. Reply at 1–5. Accordingly, Petitioner maintains that his petition should be granted, and he should either be released, or be granted a bond hearing at which the government bears the burden of demonstrating by clear and

convincing evidence that he is a flight risk or a danger to the community. Pet. at 13. In opposition, Respondent maintains that Petitioner has *not* shown that his removal is not likely in the foreseeable future, and that even if he had shown it Respondent can rebut his showing. Resp. Mem. in Opp., 8–9, Mar. 20, 2023, ECF No. 4-3. Therefore, Respondent maintains that Petitioner's application should be denied.

A. 8 U.S.C. § 1231 and the *Zadvydas* Standard

8 U.S.C. § 1231 requires that once an alien is ordered removed, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period")." § 1231(a)(1)(A). Under § 1231(a)(2), detention during the removal period is mandatory. Further, § 1231(a)(1)(C) provides that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Lastly, § 1231(a)(6) provides that an alien may be detained beyond the removal period (i.e., the "post-removal period") if the Attorney General determines that the alien is "a risk to the community or unlikely to comply with the order of removal . . . ."

In the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001), "the Supreme Court was presented with the challenge of reconciling [§ 1231(a)'s] apparent authorization of indefinite post-removal order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process." *Diaria v. Sessions*, No. 17-CV-6028 (CJS), 2018 WL 3429270, at *2–3 (W.D.N.Y. July 16, 2018). The Supreme Court determined that § 1231(a) authorizes detention after a final order of removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the Supreme Court stated:

> . . . for the sake of uniform administration in the federal courts, we recognize six months [as the presumptively reasonable time]. After this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.

*Id.* at 701.

C. Intra-circuit Split Regarding the Second Circuit's Forbearance Agreement

Petitioner notes that he has been in detention much longer than the presumptively reasonable period under *Zadvydas*, and maintains that there is "no significant likelihood he will be removed in the reasonabl[y] foreseeable future" due to ICE's forbearance agreement with the Second Circuit. Reply at 4–5. Respondent argues that the forbearance agreement is not a barrier to Petitioner's removal.

In a recent decision, Chief Judge Wolford of this judicial district explained a split among district courts within this Circuit regarding the courts' treatment of the forbearance agreement:[2]

> In 2012, DHS and the Second Circuit entered into a forbearance agreement wherein the government "has assured that removal will not occur" while the detainee has a PFR pending before that court. *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).
>
> Numerous judges in this Circuit . . . have found that the forbearance agreement amounts to a court-ordered stay of removal and that detainees with a pending PFR and motion to stay are thus not detained pursuant to § 1231. *See, e.g., Ranchinskiy v. Barr*, 422 F. Supp.3d 789, 795-96 (W.D.N.Y. 2019) (the undersigned reaching such a holding); *Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases); *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 & n.4

---

[2] To be clear, the split has arisen exclusively in regards to those cases in which the alien has filed a petition for review ("PFR") with the Second Circuit, but the motion to stay has not been adjudicated. Indeed, "the unambiguous language of the statute makes plain that" an alien cannot be detained pursuant to § 1231 when he or she has both (1) filed a PFR with the court of appeals, and (2) received a stay order. *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018).

> (S.D.N.Y. July 2, 2019) ("[B]ecause of the government's forbearance policy, an alien who files a PFR and a stay motion in the Second Circuit obtains 'the functional equivalent of a stay order,' such that § 1231 no longer governs his detention and he 'may not be denied a bond hearing on that basis.' " (collecting S.D.N.Y. cases)).
>
> However, some judges in this Circuit have found to the contrary, concluding that "the forbearance is not a stay." *Brathwaite v. Barr*, 475 F. Supp.3d 179, 186 (W.D.N.Y. 2020); *see also Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *3-4 (W.D.N.Y. Jan. 8, 2020).

*Vazques v. Garland*, No. 1:21-CV-00477 EAW, 2021 WL 3741589, at *1–2 (W.D.N.Y. Aug. 24, 2021).

This Court is among the minority of district courts in the Second Circuit that does not consider the forbearance agreement between the Second Circuit and the Department of Homeland Security to be the equivalent of a stay. As one reason for its disagreement with the majority, the Court has previously referenced the Supreme Court's persuasive account of Congress' intentional replacement of the "old judicial-review scheme" involving an automatic stay of removal for aliens who have filed a petition for review ("PFR"), with a scheme in which the need for an automatic stay has been obviated by the alien's right to have his PFR adjudicated even after the alien has been removed. *Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *4 (W.D.N.Y. Jan. 8, 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 424–25 (2009)) (discussing the "unified overhaul" that Congress made to parts of the Immigration and Nationality Act through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")).  *See also Zhang v. Holder*, 617 F.3d 650, 657 (2d Cir. 2010) (citing *Dada v. Mukasey*, 554 U.S. 1 (2008)) ("Under these revisions to the INA, an alien is no longer foreclosed from seeking judicial review of a BIA order after he or she departs from the country.").

"[T]he forbearance 'understanding' at issue here – whereby aliens filing PFRs and stay motions will not be removed until the Second Circuit rules – represents a 'voluntary decision' on the part of the Executive Branch, and is subject to change." *Brathwaite v. Barr*, 475 F.

Supp.3d 179, 187 (W.D.N.Y. 2020) (citing the "Letter from the Hon. Jon O. Newman, United States Circuit Judge, United States Court of Appeals for the Second Circuit, to David M. McConnell, Director, Office of Immigration Litigation (Mar. 16, 2009)). As such, the Court is disinclined to believe that Congress intended that its "significantly more restrictive" scheme of judicial review of orders of removal under IIRIRA, which was enacted "to allow for more prompt removal" of removable aliens, could be disregarded in favor of a procedure devised between a government agency and a federal circuit court in order to "address the [Circuit] Court's expressed concern for docket control and efficient allocation of judicial resources." *See In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for Second Cir.*, 702 F.3d 160, 161 (2d Cir. 2012). Indeed, the statute as passed by elected officials in two houses of Congress, and signed into law by an elected President, states that "[s]ervice of the [PFR] on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless the court orders otherwise." *See* 8 U.S.C. § 1252(b)(3)(B). The Court has seen no evidence that ICE's forbearance agreement with the Second Circuit constitutes a court order.

As a further reason, the Court notes the Supreme Court's discussion, in the same decision, of the legal significance of a stay of removal:

> "A stay is not a matter of right, even if irreparable injury might otherwise result." . . . . It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." . . . . ("[T]he traditional stay factors contemplate individualized judgments in each case"). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. . . . .
>
> The fact that the issuance of a stay is left to the court's discretion "does not mean that no legal standard governs that discretion . . . . '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" . . . . As noted earlier, those legal principles have been distilled into consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." . . .

9

.

> The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be "better than negligible." . . . . By the same token, simply showing some "possibility of irreparable injury," . . . fails to satisfy the second factor . . . .
>
> Although removal is a serious burden for many aliens, it is not categorically irreparable, as some courts have said. *See, e.g., Ofosu v. McElroy*, 98 F.3d 694, 699 (C.A.2 1996) ("Ordinarily, when a party seeks [a stay] pending appeal, it is deemed that exclusion is an irreparable harm") . . . .

*Nken*, 556 U.S. at 433–35 (multiple internal citations omitted).

As the Supreme Court observed, an automatic stay was necessary under the scheme of the original Immigration and Nationality Act to protect aliens from the irreparable harm of removal before decision on their respective PFRs. *Nken*, 556 U.S. at 435. In that respect, had Petitioner been detained prior to the changes enacted to the passage of IIRARA in 1996, his petition for review pending before the Second Circuit *would* serve as a substantial impediment to his removal. However, "Congress's decision in IIRIRA to allow continued prosecution of a petition after removal eliminated the reason for categorical stays, as reflected in the repeal of the automatic stay in subsection (b)(3)(B) . . . . Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435*.*

Consequently, the Court respectfully disagrees with those district courts that employ the Second Circuit's reasoning in *Hechavarria v. Sessions*, 891 F.3d 49 (2018) to suggest that "[d]istinguishing between a court-ordered stay and the *de facto* stay that results from the forbearance policy would require the Court to treat two petitioners in exactly the same procedural posture differently." *Falodun v. Session*, No. 6:18-CV-06133-MAT, 2019 WL 6522855, at *6 (W.D.N.Y. Dec. 4, 2019). On the contrary, failure to recognize the distinction would require the Court to treat two petitioners in far different procedural postures the same.

In the case of a petitioner with an order staying removal,  the Second Circuit has weighed the four stay factors, including whether the stay applicant has made a strong showing that he is likely to succeed on the merits, and reached a principled judgment that the risk of irreparable injury to the petitioner upon removal outweighs the government's enforcement of its own laws. By contrast, a petitioner whose removal is impeded exclusively by the forbearance agreement has not been subject to any judicial review of the merits of his or her case by a federal appeals court.

In short, equating the forbearance agreement between ICE and the Second Circuit with a court-ordered stay appears to run contrary to the text and intent of the statutes. It is also contrary to the nature of a stay, which the Supreme Court has described as "an intrusion into the ordinary processes of administration and judicial review . . ." which is justified by an individualized "judgment[ ] guided by sound legal principles." *Nken*, 556 U.S. at 428, 434 (internal citations omitted). The *de facto* reinstatement of the "automatic stay" to every PFR petitioner through a "forbearance agreement" seems to this Court to give short shrift to the public interest in the prompt resolution of removal, which the Supreme Court has traced to the fact that "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* at 436. Accordingly, the Court finds that the forbearance agreement is not a substantial impediment to Petitioner's removal.

D. Application of the *Zadvydas* Standard

In any event, there is no dispute between the parties that Petitioner "is subject to a final order of removal, and that *Zadvydas* controls." Reply at 2. There is also no dispute that travel documents had been issued for Petitioner's removal to St. Lucia in September 2021, but that Petitioner could not be removed because he refused to comply with St. Lucia's requirement to take a Covid-19 detection test. Gang Decl. at ¶ 29–30. Nor is it disputed that ICE notified Petitioner in January 2023 that it "has requested the Government of St. Lucia

issue a travel document for [Petitioner's] removal from the United States," and that "[a] travel document from the government of St. Lucia is expected." Ex. A, ECF No. 4-2 at 26. Therefore, because the Court does not view the forbearance agreement as a substantial impediment to Petitioner's removal, Petitioner has not shown that there is no significant likelihood of his removal to St. Lucia in the foreseeable future. *See, e.g., Nunez v. Searls*, No. 18-CV-6463 CJS, 2019 WL 2524308, at *3 (W.D.N.Y. June 19, 2019) (finding that, notwithstanding the forbearance agreement, 8 U.S.C. § 1231 did not authorize a petitioner's release while he awaited removal).

Moreover, even if the Court did view the forbearance agreement as a substantial impediment, and thus that Petitioner has met his burden to make a *prima facie* case that his removal is not significantly likely to occur within the reasonably foreseeable future, Respondent can rebut Petitioner's showing. First and foremost, Respondent has demonstrated that he has already obtained travel documents to remove Petitioner from the United States on one occasion, September 2021, and that his removal was frustrated by Petitioner's refusal to cooperate. Gang Decl. at ¶ 29–30; Ex. A at 27–28. In addition, Respondent has presented persuasive evidence that DHS repatriated approximately 20 citizens of St. Lucia in each of 2019 and 2021 (Gang Decl. at ¶ 49), and is merely awaiting a new set of travel documents from the government of St. Lucia in order to remove Petitioner (Gang Decl. at ¶ 51). The Court further notes the Second Circuit's acknowledgment that under the forbearance agreement, "[i]f the Government decides to resume efforts to remove a petitioner, the Government will notify both the Court and Petitioner at least 21 days before removing Petitioner." *In re Immigration Petitions*, 702 F.3d at 162. The Court declines to find that the 21-day notice period in the forbearance agreement falls beyond the "foreseeable future" envisioned under the *Zadvydas* standard.

## V. CONCLUSION

Because Petitioner has failed to meet his burden to show that his removal is not

significantly likely in the foreseeable future, and because even if Petitioner had met his burden, Respondent has provided a persuasive rebuttal, Petitioner's application for habeas relief [ECF No. 1] is hereby denied without prejudice. The Clerk of the Court is directed to enter judgment and terminate this action.

    SO ORDERED.

Dated:   June 21, 2023
          Rochester, New York

                                  ENTER:

                                  *Charles J. Siragusa*
                                  CHARLES J. SIRAGUSA
                                  United States District Judge